[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12625

Non-Argument Calendar

_____

MICHAEL R. ATRAQCHI,
IRENE S. ATRAQCHI,

Plaintiffs-Appellants,

*versus*

UNITED STATES OF AMERICA,
 STATE OF FLORIDA,
 RAMEZ ANDRAWIS,
MASEEHA KHALEEL,
JOHN DOE and JANE DOE,
all U.S. Adult Persons, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-00935-SDM-AEP

_____

Before NEWSOM, GRANT, and WILSON, Circuit Judges.

PER CURIAM:

Michael and Irene Atraqchi, proceeding pro se, appeal the district court's denial of their Federal Rule of Civil Procedure 60(b) motion to vacate the court's order denying them preliminary injunctive relief and dismissing their complaint with prejudice. The Atraqchis also appeal the denial of their second Rule 60(b) motion to vacate the order denying their motion to vacate. After careful review, we find that the district court did not abuse its discretion by denying either of the Atraqchis' motions because they failed to demonstrate that exceptional circumstances warranted relief from the court's orders.

## I.

In April 2022, the Atraqchis sued the United States, the State of Florida, "all U.S. adult persons,"[1] and other named defendants for "illegal wiretapping and electronic surveillances," in violation

---

[1] On appeal, the Atraqchis note that they have "removed the phrase 'all U.S. Adult Persons'" from their proposed amended complaint and "thus removed any frivolousness."

of 18 U.S.C. § 2520. Their pro se complaint alleged that a "Death Cult" comprised of medical providers, current and former government officials, and others was:

> illegally wiretapping their telephone and electronical surveillances of their hotel room in the Tampa area and elsewhere, State of Florida, on the train and buses, and for the purpose of isolating and criminating the Plaintiffs and impose religious inquisition upon them, and convert them to certain Christian denominations from being Muslims, sodomize rape them as a method of recruitment into this Cult, and force them to commit crimes against humanity, and against innocent people, citizens of the United States of America, stealing of their properties, and prostitute their children, as well as blackmail and procure them into a field of interception of illegal wire communications to spy on other people in violation of the law and the U.S. Constitution.

The Atraqchis alleged that these activities "deprived them from all medical care and economic opportunities" in the State of Florida and interfered with their constitutional rights. On the same day, they moved for a temporary restraining order and preliminary injunction to enjoin "all defendants" from "harassing and interfering with [their] medical providers." They claimed the "Death Cult" was preventing Michael from having surgery on his enlarged lipoma, and his life would be in danger if it was not removed.

By the Atraqchis' count, they have litigated "the matter of illegal wiretapping and electronical surveillances" by members of

the "Death Cult" acting "in concert with each other to deprive the Atraqchis of all their constitutional rights" and "conspiring to kill them" in "approximately fifty-four" suits over the last thirty-eight years. All of these suits were dismissed. The Atraqchis sought to have all these suits consolidated and "judged in one forum."

In May 2022, the district court denied the Atraqchis' motion for preliminary injunctive relief as "[p]rocedurally defective and substantively meritless" and dismissed the case with prejudice.[2] The court found that allowing the Atraqchis to amend their complaint would be futile because the complaint alleged no facts showing the Atraqchis were entitled to relief and satisfied no requirement for issuing a temporary restraining order. *See* Fed. R. Civ. P. 65; M.D. Fla. Loc. R. 6.02. The district court noted the Atraqchis included similar claims in at least two "generally similar" and "utterly frivolous" complaints in the Middle District of Florida.[3] *See Atraqchi v. United States*, No. 21-cv-956 (M.D. Fla. Apr. 23, 2021)

---

[2] A district court may sua sponte dismiss a suit with prejudice and without giving the plaintiff notice or opportunity to respond, "when amending the complaint would be futile, or when the complaint is patently frivolous." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (11th Cir. 2015) (per curiam). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam). Frivolous claims include those describing "fantastic or delusional scenarios." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

[3] When assessing frivolousness, a court may consider "a litigant's history of bringing unmeritorious litigation." *Bilal*, 251 F.3d at 1350. And courts may properly consider documents a complaint incorporates by reference. *See* Fed. R. Civ. P. 10(c).

*aff'd* No. 21-11526, 2021 WL 4806405, at *1 (11th Cir. Oct. 15, 2021); *Atraqchi v. United States*, No. 12-cv-209 (M.D. Fla. Feb. 24, 2012).

More than two years later, in July 2024, the Atraqchis moved to vacate the district court's order dismissing their complaint and denying preliminary injunctive relief. Citing Federal Rule of Civil Procedure Rule 60(b)(6), the Atraqchis claimed that the order should be set aside because the continuous harassment they faced as the victims of "illegal wiretapping and electronic surveillances" by "the U.S. Government, Barack Obama and Michelle Obama, and others" prevented them from litigating their case. They each attached a declaration detailing how the government and others have targeted them to deprive them of medical care.

The Atraqchis recounted a harrowing series of events that they claimed were connected to the wiretapping and surveillance. The incidents they described ranged from Dollar Tree employees contaminating breakfast pastries to infect them with rosacea, up-stairs neighbors continuously pounding on their ceiling to purpose-fully distract them from their suit, attempted murders during surgery directed by out-of-state physicians (some named in the complaint and some not), and death threats after Charleston mass shooter Dylann Roof foiled Michelle Obama's plot to assassinate the Atraqchis.

According to the Atraqchis, this and other harassment was organized by government officials "to scare the Atraqchis and prevent them from going forward with their civil suit." The Atraqchis also stated that Michael had a heart attack in March 2023, "which

prevented him from thinking of his case." Finally, the Atraqchis claimed they would suffer manifest injustice if the judgment was not vacated because Michael would "die" if the court did not set aside the order and issue an injunction to enable Michael to undergo surgery without interference by the "Death Cult."[4]

On July 22, 2024, the district court denied the Atraqchis' motion to vacate its order dismissing the case. The court found that the Atraqchis' motion repeated the allegations from their two earlier Middle District of Florida cases, which were dismissed as "clearly baseless, fanciful, and delusional" and "lack[ing] any arguable basis in either law or fact."

The Atraqchis then moved to vacate the district court's order denying their first motion to vacate. They repeated their claims that the constant harassment from illegal wiretapping and Michael's health issues prevented them from litigating the case. They also stated that the district court failed to consider that they are pro se litigants and abused its discretion by dismissing their case without leave to amend, claiming they could remedy their allegations through more specific pleading. On August 6, 2024, the district court entered an endorsed order denying the Atraqchis' motion for the reasons stated in its earlier orders.

---

[4] The Atraqchis submitted Michael's medical records in support of their motion. But the records noted that his lipomas were "benign fatty tumors" that were "asymptomatic," and "[n]o treatment [was] necessary."

Six days later, the Atraqchis appealed. The Atraqchis' notice of appeal stated that they were challenging only the order denying their second motion to vacate, but their briefing addresses both Rule 60(b) denials and the May 2022 dismissal of their complaint. To the extent that the Atraqchis challenge the district court's order dismissing their claims and denying preliminary injunctive relief, their appeal is dismissed as untimely. *See* Fed. R. App. P. 4(a)(1)(B).[5] But the Atraqchis' notice of appeal was timely for the district court's rulings on their first and second Rule 60(b) motions, and we will assume they intended to appeal both orders.[6]

## II.

We review the denial of a Rule 60(b) motion for an abuse of discretion. *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013). Discretion means "the district court has a range of choice, and that its decision will not be disturbed as long as it stays

---

[5] When the United States is a party to an action, a notice of appeal must be filed within sixty days after entry of the judgment or order being appealed. Fed. R. App. P. 4(a)(1)(B). A Rule 60 motion only tolls this deadline if it is filed no later than twenty-eight days after the order is entered. *See id*. *at* 4(a)(4)(A).

The requirement of filing a timely notice of appeal in a civil case is "mandatory and jurisdictional." *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (quotation marks omitted). We have "no authority" to create exceptions. *Id*. at 214.

[6] We "may look to the record, including the parties' briefs, to determine the orders or parts thereof an appellant intended to appeal," *Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (per curiam), and we "construe[] briefs filed by *pro se* litigants liberally," *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam).

within that range." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005) (internal quotation marks omitted).

A district court abuses its discretion when it "applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Diveroli v. United States*, 803 F.3d 1258, 1262 (11th Cir. 2015) (quotation marks omitted).

### III.

"Federal Rule of Civil Procedure 60(b) permits a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Kemp v. United States*, 596 U.S. 528, 533 (2022) (internal quotation marks omitted). The Rule's first five provisions list specific grounds for relief, including mistake, fraud, and newly discovered evidence. *See* Fed. R. Civ. P. 60(b)(1)–(5).

Rule 60(b)(6), or the "catchall category," permits a court to reopen a judgment for "'any other reason that justifies relief.'" *Buck v. Davis*, 580 U.S. 100, 123 (2017). Courts have "carefully constrained this open-ended language." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1355 (11th Cir. 2014). To re-open a judgment, movants must show that the circumstances "are sufficiently extraordinary to warrant relief," and that "absent such relief, an extreme and unexpected hardship will result." *Galbert*, 715 F.3d at 1294 (internal quotation marks omitted). Even then, the

decision of "whether to grant the requested relief is a matter for the district court's sound discretion." *Id.* (quotation marks omitted).

"The appellant's burden on appeal is heavy." *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (per curiam). We will not overturn the denial of a Rule 60(b)(6) motion because relief "might have been permissible or warranted." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). Appellants "must demonstrate a justification so compelling that the district court was required to vacate its order." *Aldana,* 741 F.3d at 1355 (quotation marks omitted and alteration adopted).

Finally, Rule 60(b) "may not be used to challenge mistakes of law which could have been raised on direct appeal." *Am. Bankers Ins. of Fla. v. Nw. Nat. Ins.*, 198 F.3d 1332, 1338 (11th Cir. 1999). At the same time, "'a good claim or defense' is a precondition of Rule 60(b)(6) relief." *Buck*, 580 U.S. at 126 (quoting 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2857 (3d. ed. 2012)). To prevent the "needless protraction of litigation," *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1020 (11th Cir. 1982), Rule 60(b) movants must "provide the district court with a basis for concluding that granting reconsideration will not be a useless gesture." *Murray v. D.C.,* 52 F.3d 353, 355 (D.C. Cir. 1995); *id.* (collecting circuit cases).

Here, the district court was within its discretion to deny the Atraqchis Rule 60(b)(6) relief.[7] In both motions, the Atraqchis

---

[7] The Atraqchis stated they sought relief under Rule 60(b)(6), but their motion also cited Rule 60(b)(1). Because they moved for relief more than two years

maintained that they were entitled to relief because Michael's health issues and the "constant harassment" they faced as victims of ongoing "illegal wire communications," prevented them from litigating the case. The Atraqchis' second Rule 60(b)(6) motion also argued that the district court failed to consider that they are pro se litigants, uneducated in law, and should have given them notice and an opportunity to amend their complaint. And on appeal, the Atraqchis claim the district court abused its discretion when it based its decision on their previous litigation.

Beginning with the first Rule 60(b) motion, the Atraqchis' medical issues might have been a "permissible or warranted" justification to vacate the district court's judgment under different circumstances. *Griffin*, 722 F.2d at 680. But Michael's heart attack occurred in March 2023, about ten months after the district court dismissed the case. The district court reasonably found that the Atraqchis' explanation for the ten months prior—that is, the "illegal wiretapping and electronic surveillances imposed upon them by former President of the United States of America, Barack Obama and his wife, Michelle Obama"—were the same "baseless" assertions from their dismissed 2012 and 2021 cases. Aside from Michael's heart attack, the Atraqchis' claimed hardships were, at the very least, not unexpected. *See Galbert*, 715 F.3d at 1294. None of

---

after the district court dismissed their claims, we only address their arguments under Rule 60(b)(6). *See* Fed. R. Civ. P. 60(c)(1); *see also id.* at 6(b)(2) (prohibiting extension of Rule 60(b) deadlines).

these circumstances "required" the district court to vacate its order. *See Aldana,* 741 F.3d at 1355

The new "extraordinary circumstances" the Atraqchis raised in their second Rule 60(b) motion—the district court's sua sponte dismissal of the Atraqchis' complaint and the Atraqchis' pro se status—also did not require the district court to grant relief. The Atraqchis' legal challenges to the district court's dismissal without notice or leave to amend "could have been raised on direct appeal." *Am. Bankers Ins.*, 198 F.3d at 1338. And even crediting the Atraqchis' explanations for not being able to challenge the court's dismissal sooner, these acts were still within the court's "range of choice" and "not influenced by any mistake of law." *Betty K Agencies, Ltd.*, 432 F.3d at 1337; *see* notes 2–3, *supra*.

A district court may dismiss a complaint sua sponte and without notice if the complaint is patently frivolous. *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). As the Atraqchis point out, the circumstances that they claim justify relief concern non-frivolous subject-matter, such as rape, attempted murder, stalking, and harassment. But the Atraqchis have not demonstrated they have "'a good claim," *Buck*, 580 U.S. at 126, or "that granting reconsideration will not be a useless gesture." *Murray*, 52 F.3d at 355. Though the Atraqchis are not required to present "detailed factual allegations," they must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). And given the "more likely explanations," *id.*, the Atraqchis have not plausibly established that any of these

disparate hardships were part of a single illegal wiretapping conspiracy orchestrated by U.S. government officials.

For similar reasons, we cannot say that the Atraqchis' pro se status requires Rule 60(b)(6) relief. Even though we hold pro se pleadings to less stringent standards than those drafted by lawyers, pro se litigants still "must suggest (even if inartfully) that there is at least some factual support for a claim." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). And we need not presume that the facts alleged in a complaint are true if they are "far-fetched or baseless." *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 515 (11th Cir. 1991). The Atraqchis' pro se status does not excuse their failure to provide enough "factual content" to allow us "to draw the *reasonable* inference" that a Death Cult of current and former government officials "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, the district court did not abuse its discretion by looking to the Atraqchis' previous litigation. When deciding whether a complaint states a plausible claim, "the court is not always limited to the four corners of the complaint." *Long v. Slaton*, 508 F.3d 576, 578 n. 3 (11th Cir. 2007) (quotation marks omitted and alterations adopted). The court may draw on context, judicial experience, and "common sense." *Iqbal*, 556 U.S. at 679. Here, in making its decision to dismiss the case as frivolous, the district court did not depart from the "permissible scope" of information—the complaint, documents incorporated into the complaint by reference, and matters of public record. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S.

308, 322 (2007); *see also* Fed. R. Civ. P. 10(c). The Atraqchis' previous cases were both incorporated into their complaint by reference and matters of public record.

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Johnson v. 27th Ave. Caraf, Inc.,* 9 F.4th 1300, 1317 (11th Cir. 2021) (quotation marks omitted). We have allowed district courts "considerable discretion" to restrict "the filing and litigating of patently frivolous lawsuits by overly litigious *pro se* litigators." *Traylor v. City of Atlanta*, 805 F.2d 1420, 1421 (11th Cir. 1986) (per curiam). Courts cannot "completely close the courthouse doors to those who are extremely litigious." *Cofield v. Alab. Pub. Serv. Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991). But they "can protect their dockets from abuse by frequent filers so long as the measures taken are a reasonable response to the abuse and access to the courts is not entirely foreclosed." *Johnson*, 9 F.4th at 1317.

Here, the district court was within its "considerable discretion" to observe that the Atraqchis were frequent litigants "attempting to relitigate specific claims arising from the same set of factual circumstances that have been litigated and adjudicated in the past," and dismiss the case sua sponte. *See Traylor*, 805 F.2d at 1422. The district court did not abuse its discretion by noting Atraqchis' claims they were the victims of "illegal wiretapping" by a "Death Cult" to "impos[e] religious inquisition upon them" were nearly identical to the allegations the Eleventh Circuit dismissed

three years earlier as "clearly baseless, fanciful, and delusional" and having "little or no chance of success." *See Atraqchi*, 2021 WL 4806405, at *1. And those allegations were akin to those in more than fifty other unsuccessful lawsuits, which the Atraqchis disclosed to the court and requested be consolidated with the case. *See, e.g.*, *Atraqchi v. Williams*, 220 F.R.D. 1, 3 (D.D.C. 2004) (describing the Atraqchis' "quite possibly pathological allegations" they are victims of "a world-wide religious inquisition, illegal wiretapping by the U.S. Government and others to 'homosexualize them'").

Because the Atraqchis fail to present justifications "so compelling that the district court was required to vacate its order" denying their first motion, we affirm the district court's denial of their second Rule 60(b) motion. *Galbert*, 715 F.3d at 1294 (quotation marks omitted).

## IV.

"Finality is a virtue in the law." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003). We are sympathetic to the hardships that the Atraqchis claim to have suffered. But we are inclined to agree with the district court that enough public resources have been squandered on the Atraqchis' allegations that these harms were somehow orchestrated by a "Death Cult" of government officials, store managers, and medical providers to "impose religious inquisition on them," "homosexualize" them, and "force them to commit crimes against humanity."

**AFFIRMED IN PART, DISMISSED IN PART.**